410          SUPREME COURT OF UTAH.          [Sept.

Musgrave. v. Studebaker Bros. Co. of Utah, 48 Utah 410.

## MUSGRAVE v. STUDEBAKER BROS. CO. OF UTAH.

No. 2876.   Decided September 19, 1916.   (160 Pac. 117.)

1. EVIDENCE—EXPERT TESTIMONY—STREETS—INJURIES TO PERSONS UPON. In an action by one injured when he tripped over a rope connecting a dead motor car with a live one which was furnishing motive power, the question whether the manner of moving the dead car was safe is not one of expert knowledge, and consequently evidence on that issue is properly excluded. (Page 415.)

2. MUNICIPAL CORPORATIONS—STREETS—INJURIES TO PERSONS UPON —CARE. As the law does not fix any particular degree of care to be exercised in moving a dead motor car along the street, but requires only the exercise of ordinary care under the circumstances, which is a question for the jury.[1]   (Page 415.)

3. MUNICIPAL CORPORATIONS — STREETS — INJURIES TO PERSONS THEREON. Where a pedestrian, who attempted to cross between the two dead motor cars which were being drawn by a live one by means of ropes, was tripped and injured, evidence that it was not safe to move the dead cars through the streets without some prior arranged signal whereby those in charge of each car could signal the other, is properly excluded in view of testimony that the drivers of the several cars blew their horns, and of the fact that the question of negligence was for the jury. (Page 416.)

4. TRIAL—EVIDENCE—REBUTTAL. In an action for injuries by a motor car, evidence as to the location of the accident, offered after defendant had introduced evidence contradicting that of plaintiff on the matter, is not rebuttal. (Page 417.)

5. TRIAL—OPENING OF CASE—DISCRETION. Whether a case shall be reopened so as to allow the introduction of testimony which should have been introduced in chief, rests in the discretion of the trial court.   (Page 417.)

6. TRIAL—REOPENING OF CASE—ABUSE OF DISCRETION. In an action by one hurt when he tripped over a rope used to haul a dead motor car and was struck by the car, it was not an abuse of discretion for the trial court to refuse to allow plaintiff to reopen his case to introduce further evidence as to the location

[1] *Spiking* v. *Con. R. & P. Co.*, 33 Utah 313, 93 Pac. 838, and *Gibson* v. *Utah L. & T. Co.*, 46 Utah 562, 151 Pac. 76.

of the accident, though defendant had introduced testimony contradicting plaintiff's evidence as to the site of the accident. (Page 417.)

7. MUNICIPAL CORPORATIONS—INJURIES TO PERSONS ON STREETS—MOTOR VEHICLES. Laws 1909, c. 113, section 4, subdn. 2, providing that every motor vehicle while in use shall be equipped with front lamps showing white lights and a red tail light, applies only to vehicles in use and not to a dead motor car being hauled through the streets by another car. (Page 418.)

8. TRIAL—INSTRUCTIONS—VERBAL INACCURACIES. Where the instructions cover the case and are correct, they are not subject to criticism because of their mere phraseology. (Page 419.)

9. TRIAL—INSTRUCTIONS—EMPHASIS. Though the court refused fifteen of plaintiff's twenty-two requests, and seven of the fifteen instructions given which correctly covered the case concluded with a direction to the jury, in event of finding certain facts, to find for defendant, the instructions are not open to the objection that defendant's theory of the case was unduly emphasized. (Page 419.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by James Walter Musgrave against the Studebaker Bros. Company of Utah.

Judgment for defendant.

Plaintiff appeals.

AFFIRMED.

*J. E. Darmer* and *S. P. Armstrong,* for appellant.

*Gustin, Gillette & Brayton, W. H. King* and *Thos. Marioneaux,* for respondent.

## APPELLANT'S POINTS.

All vehicles, whatever they be, must be provided with proper appliances and means of control and for stopping. A person is guilty of negligence if he drives his team and wagon in the street with insufficient reins with which to control

such team. (37 Cyc. 275, note 28, 276 and citations, note 33; *Cotterill* v. *Starkey,* 34 E. C. L. 965; *Welch* v. *Lawrence,* 18 E. C. L. 624.) Also where a street car is put in operation without appliances by which it can be readily controlled. (36 Cyc. 1476, notes 1 and 2; *Thompson* v. *Rapid Transit,* 16 Utah 281, [67 Am. St. 621 and note.]) A person using dangerous instruments must adopt every known safeguard to prevent injury. (29 Cyc. 460, note 60.) These rules apply to automobiles as well as other vehicles. (37 Cyc. 279; *Thiers* v. *Thomas,* 77 N. Y. Suppl. 276, 279.) The degree of care must be proportionate to the dangerous character of the machine. (2 R. C. L. p. 1183, note 15; 28 Cyc. 27.)

Autos must be kept under control, the same as other vehicles. (2 R. C. L. p. 1184, Sec. 19; *Johnson* v. *Coey,* 142 Ill. App. 147.) In case of danger, should stop. (2 R. C. L. Sec. 20, p. 1156-6, note 12; *Van Winkler* v. *Morris,* 46 Pa. Sup. Ct. 142; *Thiers* v. *Thomas,* 77 N. Y. Suppl. 276, 279.) And it must not be operated at such speed as to prevent control of the machine. (28 Cyc. 29, note 39; *Lorenz* v. *Tisdale,* 127 App. Div. 443 [111 N. Y. Suppl. 173].)

## RESPONDENT'S POINTS.

"When all relevant facts can be or have been introduced before the jury, and the latter are able to deduce a reasonable inference from them, no reason exists for receiving opinion evidence, and it is inadmissable. 'The governing rule deduced from the cases permitting the opinion of witnesses is that the subject must be one of science or skill or one of which observation and experience have given the opportunity and means of knowledge, which exists in reason rather than in descriptive facts, and therefore cannot be intelligently communicated to others not familiar with the full understanding of it.' " (17 Cyc. 41; see also Jones on Evidence, Vol. 2, page 865.)

In the case of *Meyers* v. *Highland Boy Gold Mining,* 28 Utah 96, this court said:

"When the condition of a thing is such that language is inadequate to describe it as to enable the jury to obtain a correct conception or a proper realization and comprehension

of it, witnesses may state their opinions in relation to it, or describe it by its effects upon their minds; but if their opinions are founded upon facts which can be weighed and comprehended by the jury as well as by the witness, those facts, and not opinions based thereon, should be laid before the jury." (*Lee* v. *Salt Lake City*, 30 Utah 35.)

FRICK, J.

The plaintiff sued the defendant to recover damages for personal injuries which he alleged he suffered through its negligence. The case was tried to a jury, which returned a verdict for the defendant, and the plaintiff appeals.

The plaintiff has assigned numerous errors relating to alleged erroneous rulings of the court during the progress of the trial and upon alleged errors committed in charging the jury. The assignments are grouped under nine heads, and we shall, without following their order, consider such as are deemed material.

The controlling facts, briefly stated, are as follows: On the 15th day of February, 1911, the defendant, while engaged in conducting an automobile business in Salt Lake City, was transferring two automobiles from the railroad station in the western part of the city to its storehouse or garage located in the central part of the city, and perhaps one-half or two-thirds of a mile from the station. The two automobiles were being transported by being attached to each other and to a live one by means of ropes. The ropes were about sixteen feet in length, and the space between the automobiles, when attached as aforesaid, was about twelve feet, or, perhaps, a little more. Plaintiff's evidence upon that point was that they were farther apart, but the jury was authorized to take the defendant's evidence which made it the distance just stated. A driver or chauffeur was in charge of the first or live car, and there was also a chauffeur steering each one of the two dead ones. The three men aforesaid left the railroad station, with the cars about five minutes after six o'clock p. m. and while proceeding on their way up town to defendant's garage, on the south side of Second South Street, at a point about two hundred feet east of Main Street, the plaintiff, in attempting to pass be-

tween two of the moving cars, was injured. All agree that
the automobiles were being moved at a rate of from three to
four miles an hour; that there were lights on the first or live
car which also had the cover or "hood" up, and there were ·
no lights on the two dead ones, and neither of those had a
cover or "hood" up, and that the cars were attached by means
of the ropes which were about one inch thick. The witnesses all
agree also that there were no curtains up on the first car. From
this point the evidence is somewhat conflicting. The pre-
ponderance of the evidence, however, or that which the jury
had a right to say constituted the preponderance, is substan-
tially as follows: As the three men were proceeding easterly
on the south side of Second South Street with the cars at the
point before stated the plaintiff was in the act of crossing said
street from the north to the south; that he saw that the three
automobiles were being moved and saw the three men in them;
that he attempted to pass between the live car and the one
next to it when the chauffeur in the dead or second one spoke
to him and warned him from doing so; that he then stepped
back and waited until the second car had passed him when he
attempted to pass immediately behind that car and between it
and the second dead one; that the man in the last car saw
plaintiff in the act of attempting to cross between the last two
cars and he "blew his horn and told him to get back;" that
plaintiff, nevertheless, proceeded to pass between the two
dead cars, and in doing so his leg came in contact with the
rope which was about eighteen inches from the ground, and
he then stepped on to the rope, and after doing so he fell to
the south and the front wheel of the rear car passed over his
limbs, or, at least, one of them; that all the cars were brought
to a full stop within a distance of six or eight feet after the
plaintiff fell and before the rear wheel of the last car had
reached him. The street at the point of the accident was well
lighted, some of the witnesses said better than any other part
of the city, with street arc lamps, by electric signs, and by
other electric lights which were maintained by the business
houses along the south side of the street. With respect to the
time of the accident plaintiff's witness testified that it occurred
after seven o'clock p. m., while defendant's witnesses were posi-

tive and gave some convincing reasons showing that the accident occurred a little before seven o'clock. How the facts just stated are material will be made more clear hereafter. The plaintiff and his witnesses,. however, gave their version of the accident as being somewhat different from that stated above, but the jury were justified in finding the facts as we have stated them.

During the trial the plaintiff offered evidence tending to show: (1) That the manner of moving the dead cars was not safe; (2) that it was not safe to move dead **1, 2** cars in that way without some prior arranged signals whereby the three men in the different cars could signal one another in case it became necessary to do so; and (3) that there "is a safer way of taking automobiles from the depot to the garage through the streets than the manner" in which the three cars were being moved. The court excluded the proffered evidence on the first two propositions for the reason that the subject was not one of expert knowledge, and excluded the evidence on the third one because in answering the question the witness would be usurping the province of the jury. We can see no escape from the court's conclusion. As to the first proposition it is sufficient to say that it was the duty of the defendant in passing through the streets to exercise reasonable or ordinary care so as not to inflict injury on any one else using the street. The exercise of reasonable or ordinary care under all the circumstances was the duty that the law imposed upon the defendant, and the jury were quite as capable of determining whether under all the facts and circumstances before them the defendant's employees had exercised that degree of care as was any one else. Again, it may well be conceded that so far as pedestrians were concerned there may have been a safer way to move automobiles through the streets of the city, but that is not the test. It might have been safer, perhaps, to have moved the cars only between certain hours after midnight and before daylight. Again, it might have been safer .to move them one at a time and by their own power or to have handled only one at a time with a team, or to have moved them only on certain streets that were not being greatly used by pedestrians. The law does not pre-

scribe any particular method by which vehicles may be moved on the streets. But in moving them it imposes the duty of exercising due or ordinary care. What constitutes ordinary care in view of a particular set of facts is ordinarily for the jury. That is, it is for the jury to say whether, in view of all the facts and circumstances in case of dispute, or where different inferences may be deduced by different minds, the conduct of the party charged with negligence did or did not constitute negligence, and if such conduct was negligence whether it was the proximate cause of the accident.

The plaintiff, however, further insists that it was the duty of the defendant in moving its cars in the manner it was done to provide a code of signals for the three men in the car so that in case of threatened accident or danger the two men in the dead cars could signal the one in the live car to stop it. Defendant's counsel insist that the question just stated is not properly before us for the reason that no such act or cause of negligence is alleged in the complaint. It is, to say the least, very doubtful whether any such a cause of negligence is pleaded. Giving the plaintiff, however, the benefit of the doubt upon that question, yet we are of the opinion that the assignment cannot prevail. Plaintiff's counsel do not point out any particular signal or signals that should have been adopted. Where the statute prescribes no method of signaling the whole matter must ordinarily be left to the judgment of the triers of fact. Here again the exercise of ordinary care is the test. What better signals could have been devised than the human voice and speech for the purpose of communication between the men who were only about twenty feet apart in the open street with no deafening noises or other obstructions surrounding them so far as the evidence shows? Both of the men in the two dead cars testified that they ''tooted'' or ''blowed'' their horns and spoke to the plaintiff. They also said that they used no other signals and that they had no other means of signaling either plaintiff or the man in the front car. The evidence that the jury were authorized to accept, however, showed that the cars were stopped about as soon as they could have been after the plaintiff fell. It is not easy to perceive what other system of signaling the defendant should have

provided for its employees in moving the cars. Neither do we understand that the law imposes the duty upon the defendant of providing a code of signals where the work was as simple as was the work in moving the dead cars from the station to the garage. This assignment, therefore, cannot prevail.

Another assignment relates to the court's rulings in excluding certain evidence offered in rebuttal by plaintiff. The plaintiff, in presenting his case in chief, produced evidence relative to the place where the accident **4, 5, 6** occurred. He and his witnesses testified that it occurred in front, or practically in front, of a particular cafe. The defendant's witnesses, in their testimony, placed the point of the accident a little farther west. The difference between the two sets of witnesses was, however, not great. On rebuttal plaintiff's counsel offered further evidence upon the question relating to the precise point of the accident. Defendant's counsel objected to the proffered evidence upon the ground that it was not proper rebuttal, and the court sustained the objection. Plaintiffs' counsel then requested the court to permit them to reopen the case upon that point, and the court denied their request. Both of the foregoing rulings are assailed as erroneous. As to the first proposition it is sufficient to say that the evidence was clearly not rebuttal. The plaintiff and his witnesses had given their testimony regarding the place of the accident and the defendant's witnesses had given their's. In view, therefore, that the plaintiff had gone into the subject in opening his case he had no right to again go into it on rebuttal unless the court permitted him to do so by reopening the case. The court, however, refused his request to do so, and the only question is whether the court abused its discretion in denying the request. Whether the court will or will not permit a party to reopen his case upon a certain question or subject is largely a matter of discretion. No doubt the court might abuse its discretion in that regard, and if such were the case relief could be had on appeal. We, however, cannot see any abuse of discretion in this case, and therefore this assignment must also fail.

A number of assignments relate to the refusal of the court to charge the jury as requested. Although the case was one un-

usually free from complications and involved only
issues of fact, yet the plaintiff offered twenty-two sep-    7
arate requests to charge and now insists that the court
erred in refusing fifteen of his requests. Entirely apart from
the instructions stating the issues and some so-called stock
instructions, the court charged the jury in twenty separate
paragraphs in which every phase of the case was adequately
covered. True, the court, in many instances, did not follow
either the language or the substance of plaintiff's requests,
but it, nevertheless, fully covered every legal phase of the
case. One of the requests related to the code of signals we
have referred to. We have, however, already disposed of that
phase of the case, and for the reasons then stated no error was
committed in refusing that request.

It is, however, strenuously insisted that the court erred in
refusing to charge the jury that the defendant was negligent
as a matter of law in not providing the two dead cars with
lights as prescribed by the statute in force when the accident
in question occurred. Chapter 113, Laws Utah 1909, Section
4, subd. 2, then in force, so far as material here, provided:

"Every motor vehicle while in use on a public highway shall
be    *    *    *    so constructed as to exhibit, during the period
from one hour after sunset and one hour before sunrise, two
lamps showing white lights visible within a reasonable dis-
tance in the direction towards which such vehicle is pro-
ceeding, and also a red light visible in the reverse direction."

As we have seen, the plaintiff contends the accident occur-
red more than one hour after sunset, while the defendant con-
tends that it occurred less than that time thereafter. Plain-
tiff's counsel, however, insist that inasmuch as the evidence
respecting the time the accident occurred was conflicting, he
was entitled to an instruction in conformity with his evi-
dence. As hereinbefore pointed out, the first or live car was
provided with sufficient lights, but the dead cars were not.
Did the statute apply to the dead cars? We think not. The
statute applied to cars only "while in use on a public high-
way." It is manifest to our minds that it was the intention
of the Legislature in adopting the statute to limit its provisions
to such cars only as were actually being used on the public

highways or streets that is, to such as were being driven by their own power either for business or for pleasure. The phrase "while in use on a public highway" shows a clear intent not to include every motor vehicle that may be moved in some manner on the streets or highways. With that limitation, however, so clearly expressed, there can be no doubt that the statute has no application to motor vehicles that were merely being moved on the street for the purpose for which the two cars in question were being moved. Any other construction would do violence to the natural, ordinary, and obvious meaning of the language of the statute. For the reasons stated, therefore, the court committed no error in refusing to charge as requested.

Many of the objections to the instructions of the court constitute mere criticisms of the phraseology used by it. Such criticisms are always possible, the only difference being that the phraseology used by one judge or in one case may be more vulnerable than the phraseology of another judge or that used in another case. Where, as here, however, it clearly appears that each party not only had but exercised every opportunity to develop its side of the case and the court in its charge fully covered every legal phase of the issues and correctly submitted those issues to the jury, we cannot interfere, although if we had tried the case we, in certain particulars, should have used different language or in certain other particulars should have been inclined to follow more nearly the language of the requests. From a careful reading of the whole charge we cannot see how, by anything the court said or omitted to say, the jury could have been misled either as to the law or regarding their duty in the premises.

Finally, complaint is made that the instructions given, as counsel put it, "were strictly a defendant's instructions." That complaint is based upon the fact that seven paragraphs of the court's charge end by telling the jury that if they find the facts to be as stated they "must find for the defendant," or that under such finding their verdict cannot be "against the defendant." No serious complaint is made that the legal conclusions stated by the court are not sound if the facts upon which the conclusions are

predicated are found to be as indicated. While a court may make a particular subject involved in a case, or a particular phase thereof, too prominent by frequent repetitions and in that way may create an impression favorable to one or unfavorable to the other party, yet where, as here, the charge correctly states the law and also correctly outlines the duty of the jury we cannot say that the mere repetition of the things complained of resulted in prejudice. In our judgment they could not have produced such a result. While counsel are, and should be, free to criticize courts for careless statements and frequent repetitions in giving instructions to juries, yet a mere cursory examination of the very numerous requests that are constantly being offered in almost every contested case demonstrates beyond all question that counsel themselves are most to blame for at least a large portion of that vice in instructions. In this case plaintiff's counsel offered twenty-two requests to charge many of which are not only quite lengthy, but relate to the same subject. There are, therefore, frequent repetitions in the requests. If the requests had been given, therefore, the vice of repetition complained of by counsel would not only not have been eliminated, but it would, if anything, have been more pronounced than it now is, the only difference being that it would have been less objectionable from counsel's point of view.

In concluding this opinion we desire to say that the jury no doubt were impressed with the fact that the plaintiff, in hurrying to reach his destination, a cafe, deliberately passed between two of the moving cars, and that he did so in spite of the warnings of the chauffeurs; that in stepping on the rope by which the two cars were attached he lost his balance and fell immediately in front of the front wheel of the rear car; that under the circumstances defendant's employees stopped the cars as soon as they could be stopped; and that the plaintiff's carelessness, and not that of the defendant, was the proximate cause of the injury. That such was the jury's conclusion, is, we think, made manifest from the evidence and the court's charge. The court in its charge to the jury followed the principles which we held apply to those who are using the public streets in the cases of *Spiking* v. *Con. R. & P. Co.*, 33

Utah 313, 93 Pac. 838, and *Gibson* v. *Utah L. & T. Co.*, ..
Utah .., 151 Pac. 76. We cannot see how, under the rule
laid down in those cases, the plaintiff can recover in view that
the jury found the facts in favor of the defendant.

Upon the whole record we are constrained to hold that the
judgment should prevail. The judgment is therefore affirmed,
with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.