# RUDOLPH KLANDE v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 1, 1925.

No. 24,455.

**Charge to jury on contributory negligence should not have been given.**

In charging the jury, in an action for personal injuries sustained by a truck driver's helper in a collision between a truck and a railroad train at a highway crossing, the court read the rules formulated in Carnegie v. G. N. Ry. Co. 128 Minn. 14, and directed the jury to apply them in considering the question of contributory negligence. Under the evidence quoted in the opinion, these rules were not applicable and should not have been given to the jury as their guide.

1. See Railroads, 33 Cyc. p. 1141.

Action in the district court for Pine county. The case was tried before Searles, J., and a jury which returned a verdict for $6,500. Defendant appealed from an order denying its motion for a new trial. Reversed.

*Murphy & Pickering* and *A. L. Janes*, for appellant.
*Hurley & Hurley*, for respondent.

LEES, C.

Appeal from an order denying defendant's motion for a new trial of an action brought to recover damages for injuries sustained when the plaintiff was thrown from a motor truck in a collision with a train at a street crossing. One of the charges of negligence was that defendant failed to give signals of the approach of the train, and one of the defenses pleaded was negligence on the part of the driver of the truck, a man named Brooks, and of plaintiff, who was Brooks' helper.

When the accident happened plaintiff and Brooks were employed at Cloquet by a firm engaged in constructing a paper mill. The crossing extended over a number of railroad tracks. The accident

[1]Reported in 203 N. W. 773.

happened in the daytime. The train was westbound; the truck came on the crossing from the south. Plaintiff sat in the cab on the side from which the train came. There was a window in each side of the cab. There was evidence from which the jury might find that plaintiff could have seen the train when the truck was far enough from the crossing to permit the driver to stop in ample time to avoid the collision. With respect to his duty to keep a lookout for trains, plaintiff testified as follows:

Q. "Did you ever have any talk with Brooks about looking out for trains?

A. "No, sir.

Q. "Brooks never asked you to keep a lookout for trains?

A. "No. Brooks said once—he said, help him look out, and I did.

Q. "And when did he say that to you, the day of the accident?

A. "I think it was before, I guess.

Q. "You think it was when?

A. "It was before the accident.

Q. "On the same day?

A. "I couldn't say."

As to when he first saw the train, he testified that it was "just about when we was hitting the track, just about on the track. I said 'Wo-op' and he was to a stop."

Brooks was a witness for the plaintiff. He testified that he noticed a switch engine near the crossing and stopped 100 feet from the railroad tracks until he saw that the engine was not going to pass over the crossing, then he started up and was on the crossing when, to use his own language:

"(I) shifted from second coming into high when I noticed a flicker on the side of the cab. I glanced and I was approaching the track and I seen this locomotive coming. I threw her into neutral, slammed on my brake. When I done that I shoved her across into reverse and when I felt it I slammed for the accelerator and it took me. The Great Northern engine * * * hit the front wheel * * * of the truck."

He also testified that he was traveling at a speed of about 4 miles an hour and could have stopped the truck in the space of 15 feet. As to his request that plaintiff look out for trains at the crossing, he testified as follows:

"I don't recollect of saying anything to him on that morning, but days before I have cautioned him on side tracks.  *  *  *  I said: 'If you watch your side of the crossing. Lots of times I got something that took my attention. We have got to be careful', I told him. We come close a couple of times and I says: 'Now we ought to be careful'."

He also testified that in a statement made to defendant's claim agent after the accident, he said:

"I just cautioned him (plaintiff) about an hour or so before that happened. I was crossing the side track and the paper mill engine was coming up the side track and I said: 'See, you want to keep your eye open for that side. I can't look through you and lots of times I might overlook it'."

The court denied defendant's request for an instruction that plaintiff and Brooks were mutually charged with the duty of exercising ordinary care to avoid a collision with railroad trains at highway crossings; that Brooks had directed plaintiff to keep a lookout for trains approaching from his side of the truck and that plaintiff had undertaken to do so, and, if either man failed to exercise ordinary care in looking and listening for approaching trains, and such failure was the proximate cause of plaintiff's injuries, he could not recover.

On the theory that, in law, plaintiff occupied the same position as a gratuitous passenger, the court read to the jury a portion of the opinion in Carnegie v. G. N. Ry. Co. 128 Minn. 14, 150 N. W. 164, and told the jury that the rule there stated should be applied in determining whether plaintiff was chargeable with contributory negligence; that he was to be considered as a passenger and, although he and Brooks were coservants in the pursuit of their employer's business, the rule with reference to passenger governed.

Exception was taken to the refusal to give the requested instruction and to the giving of the instruction based on the Carnegie case, and the motion for a new trial was founded in part upon these alleged errors, and they are assigned as error here. These assignments raise the only question we need consider in disposing of this appeal.

For the purpose of the discussion, we assume that the defendant failed to observe the statutory requirements as to signals at highway crossings and that its failure was a proximate cause of the injury to plaintiff. The inquiry then is whether, under the evidence, the court was justified in instructing the jury that plaintiff was under no higher duty than a gratuitous passenger to keep a lookout for trains approaching the crossings from the east. The testimony of plaintiff and Brooks, to which we have alluded, showed pretty clearly that Brooks expected plaintiff to assist him in keeping a lookout for trains and that plaintiff had undertaken to do so. He had a better view of the tracks east of the crossing than Brooks had. He was not a mere passenger and did not have a right to rely wholly on Brooks' vigilance. He knew that in a measure Brooks depended on him to keep a lookout for trains. He was not at liberty to assume that Brooks would look to see whether a train was approaching from the east. Under the circumstances, plaintiff had an active duty to perform. He could not suppose that Brooks would give his undivided attention to the dangers by which the two men were surrounded while crossing the tracks. The court erred in instructing the jury that plaintiff was under no greater duty to exercise care for his own safety than a passenger in a hired vehicle or one riding with the driver at his invitation. Because of this error there must be a new trial.

Order reversed and a new trial granted.