AVIS RENT–A–CAR SYSTEM
and Continental Casualty
Company, Plaintiffs,

v.

Chor VANG, Cheng Lee, Tang Xiong, as trustee for the next-of-kin of Youa Yang; XA Yang; and Lor Lee, as trustee for the next-of-kin of Pa Houa Lee and Pee Vang, Defendants.

No. 99–1043 (JRT/FLN).

United States District Court,
D. Minnesota.

Dec. 7, 2000.

Shawn M. Raiter, Larson and King, LLP., St. Paul, MN, for plaintiffs.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, P.A., MN, for defendant Tang Xiong.

Brian A. Wood, Rider, Bennett, Egan & Arundel, MN, for defendant Chor Lee.

Bradley H. Ratgen, Meuser, Rondestvedt, Batchelor & Ratgen, PLC, Minneapolis, MN, for defendant Cheng Lee.

Gregory J. Walsh, Walsh Law Group, St. Paul, MN, for defendant Xe Xang.

Rhett A. McSweeney, McSweeney & Fay, P.L.L.P., Minneapolis, MN, for defendant Lor Lee.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiffs, Avis Rent–a–Car ("Avis") and Continental Casualty Company ("Continental"), and defendants move on cross-motions for summary judgment for a judicial declaration on the following issues: 1) whether Minn.Stat. § 170.54 applies to hold Avis vicariously liable for the negligence of Cheng Lee and if so, whether Avis' liability is limited to the statutory amount provided in Minn.Stat. § 65B.49, subd. 5(a)(2); 2) whether Cheng Lee qualifies as an "authorized driver" under the terms of a non-mandatory additional liability insurance ("ALI") policy; and 3) whether Avis or Continental owe Cheng Lee a defense for any claims brought against him. For the reasons set forth below, the Court holds that: 1) Minn.Stat. § 170.54 was not triggered in this case because the accident took place outside Minnesota; 2) Cheng Lee does not qualify as an "authorized driver" as that term is defined under the ALI policy and 3) neither Avis nor Continental owe Cheng Lee a defense. The Court accordingly grants plaintiffs' motion for summary judgment in its entirety and denies defendants' motion for summary judgment.

## BACKGROUND

Both parties agree that this case centers around legal issues and can be resolved on summary judgment. In February 2000, the parties entered into a set of stipulated facts, which provide in relevant part:

On October 9, 1998, Chor Vang rented a 1998 Toyota Camry from Avis Rent–A–Car in Minneapolis. Vang planned to travel from Minnesota to Michigan to visit family and friends. In doing so, Vang entered into a Rental Agreement with Avis in which he agreed to comply with the contract's Rental Terms and Conditions. Avis provided Vang with a copy of that document at the time of the rental. The Rental Agreement also offered Vang the option to purchase additional liability insurance coverage with liability limits of $1,000,000. This additional coverage was underwritten by Continental Casualty Company. Vang purchased the additional insurance that same day, agreeing to pay an additional $8.95 per day for the coverage. Avis provided Vang with a brochure describing the ALI coverage he had just purchased. A copy of the entire ALI policy was also available at Avis' office for Vang's inspection.

Later that evening, Vang departed Minneapolis heading for Detroit accompanied by relatives in his car and another car, also an Avis rental, following behind him. After driving through the night and within two hours of Detroit, Vang decided to allow 19–year old Cheng Lee to take over the driving of the rental vehicle. Lee was not listed as an additional driver nor had he completed the additional driver form required by the Avis Rental Agreement. Lee was also under 25 years old, the minimum age required under the Rental Agreement to drive an Avis rental car. At 8:50 a.m. on October 10, 1998, Cheng Lee came upon a tractor trailer stopped in the right traffic lane on Interstate 94. Lee lost control of the Camry and crashed into the back of the rig killing Pee Vang, Pa Hua Lee and Youa Yang as a direct result of the accident. Xa Yang was seriously injured. Avis and Continental subsequently brought this lawsuit seeking a declaratory judgment of their rights and liabilities with regard to the October 10, 1998 accident.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, a court is required to view the facts in a light most favorable to the nonmoving party. *See Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II. Vicarious Liability Claim

Under the Minnesota Safety Responsibility Act, an owner of a motor vehicle may be held vicariously liable for another person's use of that vehicle. Minn.Stat. § 170.54, provides that:

> Whenever **any motor vehicle shall be operated within this state,** by any person other than the owner, with the consent of the owner, express or implied, **the operator thereof shall in case of accident,** be deemed the agent of the owner of such motor vehicle in the operation thereof.

(Emphasis added.)

Avis contends that it cannot be held vicariously liable for an accident that occurred in Michigan because the plain language of Minn.Stat. § 170.54 limits the imposition of vicarious liability to accidents that occur within Minnesota. Defendants argue that Avis mistakenly equates the term "operate" with "accident." Specifically, defendants contend that the statute is triggered whenever the vehicle is "operated" within Minnesota at some point in the journey. Under this interpretation, § 170.54 applies in this case because defendants departed from Minneapolis on their way to Chicago. Defendants rely on *Ewers v. Thunderbird Aviation, Inc.,* 289 N.W.2d 94 (Minn.1979), to support this interpretation. In *Ewers,* the Minnesota Supreme Court, interpreting a similarly-worded aviation statute, Minn.Stat. § 360.0216,[1] held that an aircraft owner was vicariously liable for the negligence of

---

1. Section 360.0216 states:

When an aircraft is operated within the airspace above this state or upon the ground surface or waters of this state by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation.

a third party who caused an airplane crash in another state. *See id.* at 98. The court held that the statute is triggered if the evidence shows that the aircraft was operated in Minnesota during some point of the flight. *See id.* at 99.

The Court is unaware of a case that has interpreted the application of § 170.54 with facts similar to those present in this case—that is, where the vehicle was "operated" within Minnesota, but the "accident" took place in another state. Several courts have held that § 170.54 does not apply to accidents occurring out of state. *See Darian v. McGrath,* 215 Minn. 389, 10 N.W.2d 403, 405 (1943); *Lord v. Kronick,* 1995 WL 34830 at \*1 (Minn.Ct.App.1995) (unpublished decision); *Armstrong v. Miller,* 189 N.W.2d 688 (N.D.1971). However, in each of those cases, there was no evidence that the vehicle was ever operated within Minnesota at some point in the journey. Therefore, on these facts, the case is one of first impression.

■ After thoroughly reviewing the statutory language and arguments advanced by both parties, the Court holds that § 170.54 does not apply to accidents occurring outside Minnesota, even when the vehicle was operated within Minnesota at some point in the trip. The plain language of § 170.54 indicates that the location of the accident should be read together with where the vehicle is being operated. *See United States v. McAllister,* 225 F.3d 982, 984 (8th Cir.2000) (stating that the starting point in interpreting a statute is always the language of the statute itself and that if the plain language of the statute is unambiguous, that language is conclusive). The presence of the word thereof in the statute is significant because it links the accident clause to the operation clause. A plain reading of the statute thus indicates that the legislature intended § 170.54 to apply only where both the operation of the vehicle and the accident occur in Minnesota.

Defendants' reliance on *Ewers* does not lead the Court to a different conclusion.

At oral argument, defendants' counsel described this case as *"Ewers* on land." While the analogy was initially appealing, a closer review of that case indicates that the holding in *Ewers* is distinguishable from the case at bar. First, the *Ewers* court did not, as defendants contend, discuss § 170.54 "in great detail" nor did it refer to the similar wording in § 170 .54 to find that § 360.0216 applies to out-of-state plane crashes. Even if the *Ewers* court had compared the two statutes, this Court is confident that it would have discovered that the statutory language of both statutes differ in an important way. Unlike § 170.54, the aviation statute does not contain the word "thereof" to link the accident clause to the operation clause.

Additionally, from a policy standpoint, the Court is hesitant to adopt a rule that may cause parties to litigate the application of § 170.54 whenever the facts indicate that a vehicle traveled within Minnesota. For example, would a vehicle qualify as having been "operated" within Minnesota where the car passed through the state from South Dakota to Wisconsin only to be involved in an accident days later in Illinois? Similarly, would the operation of the vehicle within Minnesota have to occur on the same day or leg of a journey as the accident? How much time or distance can elapse between the operation of the vehicle within Minnesota and an accident occurring out of state before the connection between the two becomes too attenuated? The Court is unwilling to adopt an interpretation of § 170.54 that creates such difficult line drawing problems. This concern, along with the conflicts that would arise between the application of § 170.54 and statutes in other states that are triggered whenever an accident occurs within the other state, persuades the Court that the statute's applicability should be confined to accidents occurring within Minnesota.

For the above stated reasons, this Court finds that § 170.54 does not apply in this case where, although the vehicle departed

from Minnesota, the accident occurred in Michigan. Because § 170.54 is inapplicable in this case, the Court need not address the issues of whether the *initial permission rule* applies or whether Avis' vicarious liability is limited by Minn.Stat. § 65B.49, subd. 5(a)(2).

## III. The ALI Policy

The next issue is whether Cheng Lee is covered under the ALI policy purchased by Chor Vang on October 9, 1998. Avis contends that the ALI policy was never triggered by the accident because Cheng Lee was not an authorized driver as that term is defined by the policy. Lee never completed an additional driver form listing him as an authorized driver of the vehicle and he was not old enough to be an authorized driver under Avis' 25–year old minimum age requirement. Defendants argue that the term "authorized driver" is an undefined term under the ALI policy and is thus subject to two equally plausible definitions. Defendants suggest that "authorized driver" could mean either 1) only those drivers as defined by the Avis rental agreement or 2) anybody authorized to drive the car pursuant to the express permission of an additional insured in this case Chor Vang. As an ambiguous term, defendants contend that the language should be construed against the insurer thus providing Cheng Lee with coverage under the ALI policy.

The Court disagrees with defendants' contention that "authorized driver" is an undefined or ambiguous term. The term is defined in both the ALI brochure given to Vang at the time he purchased the additional insurance coverage and in the ALI policy that was available for Vang's inspection. The ALI brochure expressly provides:

> ALI insures you and authorized operators as defined in the Avis Rental Agreement against claims made by third parties against you, the customer, for bodily injury/death and property damages caused by the use or operation of an Avis rental vehicle as permitted in the Avis Rental Agreement.

(Emphasis added.) Paragraph 17 of the Rental Agreement defines who is authorized to drive an Avis rental car as follows:

> 17. *Who else may drive the car.* Only my spouse, my employer or a regular fellow employee incidental to business duties or someone who appears at the time of rental and signs an additional driver form, may drive the car but only with my prior permission. The other driver must be at least 25 years old and a capable and validly licensed driver.

The ALI policy also defines the term authorized driver, albeit less clearly than the ALI brochure. The ALI policy states that it insures Avis, its subsidiaries and additional insureds. The policy defines an **additional insured** as follows:

> Additional Insureds means those persons, renting a car from Avis Inc. and Subsidiaries who have agreed in writing to accept additional liability insurance for an additional daily charge as shown in the rental agreement. Such a person becomes an additional insured from the day and hour that person signs the rental agreement until termination of the rental. **The term additional insured also includes any authorized driver of the car (as such drivers are described in the rental agreement)** during the time that the person renting the car is an additional insured.

(Emphasis added.)

The bracketed statement "as such drivers are described in the rental agreement" defines the term authorized driver. That definition is also consistent with the more explicit definition provided in the ALI brochure. The Court thus finds that authorized driver is a defined term under the policy. Moreover, this definition plainly excludes Cheng Lee from the policy's coverage. Cheng Lee was not Chor Vang's spouse, his employer nor a fellow employee. Additionally, Cheng Lee did

not complete an additional driver form that would have qualified him as an authorized driver. Even if he had completed the form, Lee would not have qualified because he was under 25 years of age, the minimum age required to drive an Avis rental car.

Despite the plain language of the ALI policy, defendants rely on *State Farm Mutual Auto. Ins. Co. v. Budget Rent–A–Car Systs., Inc.*, 359 N.W.2d 673 (Minn.Ct.App. 1984), to support their contention that Lee is covered by the policy. There, as in this case, a rental car was involved in an accident while being driven by someone who was given permission to drive by the renter of the car but was an unauthorized driver according to the Rental Agreement. *See id.* at 675. The rental agreement expressly provided that Budget and its insurer would not cover any driver not listed in the agreement. *See id.* at 676. The omnibus clause of an excess policy purchased by Budget extended coverage to "Budget as well as any individual driving with Budget's permission." *Id.* at 675. Budget argued, as Avis does here, that since the driver of the vehicle was not a named additional driver of the rental car, he was not a "permissive user" of the car and thus not covered by the omnibus clause in the policy. *See id.* at 676. The court, however, disagreed. It applied the *initial permission* rule[2] to hold that the unauthorized driver was covered under the policy because he was given permission to drive by the renter of the vehicle. *See id.*

Although *State Farm* is factually similar to the case at bar, defendants overlook a crucial distinction in the policy at issue in *State Farm* and the policy at issue here. In *State Farm,* the omnibus clause did not contractually limit a renter's coverage should he/she violate the terms of the agreement. Without such a disclaimer, the court applied the *initial permission*

rule to find coverage for the unauthorized driver. Here, the ALI policy contains such a disclaimer. The ALI brochure given to Chor Vang at the time he purchased the additional insurance explains that ALI coverage is excluded: "If you or authorized operators use or **permit the use** of your Avis rental vehicle in a manner that violates the Avis Rental Agreement." (Emphasis added.) This disclaimer distinguishes the ALI policy from the policy at issue in *State Farm.* Moreover, the disclaimer itself expressly precludes the application of the *initial permission* rule in Cheng Lee's favor. For these reasons, the Court finds that the plain language of the policy combined with the express disclaimer excludes Cheng Lee from coverage under the ALI policy.

## IV. Defense for Cheng Lee

Finally, Avis and Continental seek a judicial declaration that neither of them owe Cheng Lee a defense for claims that may be asserted against him. Neither Avis nor Continental entered into a contractual relationship with Lee and Minnesota law does not require that a driver be provided a defense. Defendants do not appear to oppose this motion and the Court agrees with plaintiffs that neither Avis nor Continental is legally required to defend or indemnify Lee. Lee did not enter into a contractual relationship with either Avis or Continental. Minnesota Statutes § 65B.48, subd. 1 and § 65B.49, subd. 3 do not require that a driver be provided a defense and Lee was not a lessor as that term is defined under Avis' insurance policy. For these reasons, the Court grants Avis and Continental's motion on this issue.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of

---

**2.** The *initial permission* rule provides that "when the owner of a motor vehicle grants another person permission to use the vehicle, major departures from the initial scope of permission, short of conversion or theft, do

not relieve the owner from vicarious liability for the permittee's negligent use of the vehicle." *Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 332 N.W.2d 160, 167 (Minn.1983).

counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for summary judgment [Docket No. 22] is **GRANTED.**

2. Defendants' motion for summary judgment [Docket No. 28, 21] is **DENIED.**

3. The Court **DECLARES** that:

a. Avis is not vicariously liable under Minn.Stat. § 170.54, for the actions of Chor Vang and Cheng Lee;

b. the Additional Liability Insurance policy does not apply and plaintiffs are not obligated to provide additional liability coverage for claims arising out of the October 10, 1998 accident;

c. Avis owes a maximum of $60,000.00 for damages caused in relation to the October 10, 1998 accident pursuant to the Minnesota No–Fault Act, Minn.Stat. § 65B.49, subd. 3;

d. neither Avis nor Continental owe Cheng Lee a defense for any claims which may be asserted for injuries sustained in the October 10, 1998 accident.

LET JUDGMENT BE ENTERED AC-CORDINGLY.